IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ahmed "Doe", *et al.*, <br><br> v. <br><br> GEORGE W. BUSH, <br> President of the United States, <br> *et al.*, <br><br> ***Respondents*** | Civil Action No. <br> 05-CV-1458 (ESH) |

**PETITIONERS' MEMORANDUM IN RESPONSE TO RESPONDENTS'
MOTION FOR ORDER TO SHOW CAUSE**

This Memorandum is submitted in response to Petitioners' Motion for Order to Show Cause why this matter should not be dismissed for lack of proper "Next Friend" standing or, in the alternative, to stay the proceedings pending related appeals and for continued coordination. Petitioners respectfully request that the Court deny the Respondents' request for a denial of the within matter for the reasons set forth below.

**ARGUMENT**

**I.   The Respondent's Motion for Order to Show Cause should be denied, as the problems associated with the identification of the Guantanamo prisoners have been caused by the Respondents.**

Responding to the declaration of the Supreme Court in *Rasul v. Bush*, 124 S.Ct. 2686, 2698 (2004), that the detainees at Guantanamo Bay have the right to access the U.S. courts to challenge

their detention under 28 U.S.C. § 2241, the Center for Constitutional Rights and associate co-counsel began a campaign to get each detainee his day in court. However, the respondents have repeatedly failed to provide even basic information concerning the identity of the prisoners being held at Guantanamo Bay Naval Station. The respondents first and foremost have steadfastly refused to simply publish the names and 'Internment Serial Numbers' ("ISN") of all prisoners.[1] See Smith Declaration, ¶ 10 (attached hereto as Exhibit A). As such, even the task of trying to identify the prisoners who wanted legal assistance was a monumental task. See Smith Declaration, supra, ¶ ¶ 13 - 23.

The respondents argue that if there was a more rigorous relationship between the prisoner and the next friend, there would be less "identification issues that have plagued the parties in the Guantanamo detainee litigation thus far". See Respondents Motion at 14. However the rules imposed by the Respondents have made identification extremely difficult. If respondents would just identify the names which they believe to be the correct names of the prisoners, identification issues would be relieved. See Smith Declaration, supra, ¶ ¶ 24 - 30. The fault of any identification problems does not rest with the Petitioners' counsel, but with the Respondents. Id. Respondents deemed the ISNs of the prisoners to be For Official Use Only until July 7, 2005. Id. Making the ISNs classified made no sense, and Respondents must accept the fact that if there are problems with the identifications of prisoners, it is a problem that has been created by the Respondents themselves. Id.

---

[1] Even some family members do not know who is truly in Guantanamo Bay, however the Respondents have steadfastly refused to even take the simple measure of publishing the names and 'Internment Serial Numbers' of all prisoners. See Smith Declaration, ¶ 10 (attached hereto as Exhibit A).

Despite the numerous efforts of the Center for Constitutional Rights ("CCR") to receive next of friend authorizations for the prisoners, CCR and its partners have been unable to identify next friends for the vast majority of Guantanamo detainees. See Olshansky Declaration, ¶¶ 5 - 8 (attached hereto as Exhibit B). Upon information and belief, over 300 prisoners remain unrepresented for the simple reason that the Respondents have held them virtually incommunicado and in physical isolation. See Olshansky Declaration, supra, ¶ 8. Despite many good faith efforts to communicate with the Respondents, CCR has been denied the opportunity to communicate with the detainees and advise them of their rights. See Olshansky Declaration, supra, ¶¶ 11 - 18. Through many attempts, the Petitioners' counsel have attempted to obtain the names and identifying information of the detainees, however the Respondents have denied all of these requests. Id. The very information that the Respondents claim is deficient in the authorization of Omar Deghayes' was repeatedly requested by CCR. Id. As stated above, it is ingenuous for the Respondents to point to supposed insufficiencies in the next friend authorizations when the Respondents have refused to comply with the numerous requests for even basic information.

Additionally, confounding the problem, the Respondents' have not given accurate information to the allies of the United States. This inaccuracy of the Respondents' own data is a cause of misinformation. See Smith Declaration, supra, ¶¶ 31- 38. Even if, and in spite of the numerous roadblocks imposed by the Respondents, the prisoners were identified, it is even more difficult if not impossible to identify the names of the prisoners' family members. See Smith Declaration, supra, ¶¶ 39 - 42. The Respondents' however accuse the volunteer counsel for the prisoners of "improperly abusing the next friend in order to merely solicit the Guantanamo detainee population for clients..." See Respondents Motion at 14 n.11. Such an allegation - presumably with

3

overtones of ethical impropriety - is difficult to accept in light of the fact that Petitioners' counsel have gone to great length to secure counsel for the prisoners. See Smith Declaration, supra, ¶ ¶ 43 - 46. Such processes have been extremely expensive and time consuming, and the undersigned have not received any remuneration. Id. The only reason Respondents' counsel has sought out next of friends is because the Respondents have held them effectively incommunicado in Guantanamo Bay. Id.

The Respondents argue that using 'friends' of the prisoners at Guantanamo is unnecessary because there are other ways to achieve the same ends. See Respondents' Motion, at 13. This argument apparently suggests that authorizations from family members is a more simple alternative. However, such a process is extremely difficult if not impossible due to the need for international travel and/or foreign government interference. See Smith Declaration, supra, ¶ ¶ 47 - 77. Then, in November of 2004, a new avenue to the prisoners' access to counsel became available. Omar Deghayes informed his counsel, Clive A. Stafford Smith, that Ahmed Doe desperately wanted counsel. See Smith Declaration, supra, ¶ ¶ 78 - 80. The Center for Constitutional Rights sought to persuade the Military to agree to circulate a meaningful notice that the prisoners were entitled to counsel, however the Military instead issued a Enemy Combatant Notice (ECN) representing that the prisoners could ask a friend or a family member or a lawyer to file a petition for writ of habeas corpus. See Smith Declaration, supra, ¶ ¶ 81 - 89. Omar Deghayes understood the Military's ECN to mean that he could file a request for legal assistance for his 'friends' in Guantanamo Bay. Id. Based upon the Military's ECN, Omar Deghayes did in fact execute a "Next of Friend" authorization and is acting as the Next of Friend for Ahmed "Doe" in this matter.

4

It is unreasonable and unrealistic for the Respondents to pretend that the prisoners can easily secure the legal assistance that they desire. In fact, there are certain areas that have special problems as the prisoners are isolated and held incommunicado. See Smith Declaration, supra, ¶ ¶ 90 - 96. The Military has interfered with the right to counsel, and in fact manipulated the prisoners into thinking that their lawyers are a part of or related to the Guantanamo Bay operation. See Smith Declaration, supra, ¶ ¶ 97 - 107. Interrogators consistently tell prisoners that the lawyer's advice is wrong and have even engaged in deceptive practices such as impersonating counsel. Id.

## II.  Respondents' Motion for Order to Show Cause precludes Ahmed Doe from meeting with counsel as requested by him through Omar Deghayes.

Respondents' Motion for Order to Show Cause effectively seeks to preclude the undersigned counsel from following the procedures as outlined by the Respondents themselves. The Respondents' Motion should be denied in light of the fact that Ahmed Doe acted consistently with Respondents' *own* procedures. Respondents' Enemy Combatant Notification states that a detainee may:

> ask a civilian judge to look at the lawfulness of [his] detention through a process called a petition for writ of habeas corpus. [He] may *ask a friend* or a family member or a lawyer to file such a petition with the court. If [he does] not have a lawyer or a family member or friend who could file this petition for [him], [he] may file [his] own petition.
>
> (Enemy Combatant Notification, Exhibit A to the Declaration of Frank Sweigart, dated August 31, 2005 filed with the Motion for Order to Show Cause (emphasis added).)

The Notification refers to a "friend" but does it does not say that this "friend" must satisfy the standing requirements under federal law for Next Friend status. Ahmed Doe did exactly what

5

Respondents advised him to do; he asked Mr. Omar Deghayes for help. As Next Friend, Mr. Deghayes fulfilled his promise to Ahmed Doe and filed a habeas corpus petition (through counsel) on Ahmed Doe's behalf. Mr. Deghayes was thus acting to secure access to counsel and help Ahmed Doe challenge the legality of his detention.

**III.   Respondents' Motion contradicts the position that they have taken on other habeas corpus proceedings in this Court.**

Respondents have explicitly have acknowledged the propriety of the Next Friend standing of fellow detainees such as Mr. Deghayes in *John Does 1-570 v. Bush*, 05-CV-0313(CKK) (D.D.C.). In disputing Petitioners' argument that detainees had been denied access to the courts in that case, Respondents argued that the vast majority of these detainees have filed petitions through other individuals acting as legitimate next friends - family members, an attorney who already represented the detainee in pending military commission proceedings, and fellow detainees. However, in this case the Respondents have taken the contradictory position and now seek to challenge that which they previously argued was a proper method for a prisoners' access to the court.

**IV.   Respondents' have not shown that the prisoners have received adequate notification of their rights to submit habeas corpus petitions, and the Respondents' generalization that all detainees have received notification of their rights leaves unanswered factual questions.**

The Respondents have argued that they have "notified each detainee at Guantanamo Bay of his right to file a petition for habeas corpus..." See, Respondents' Motion, at 7. However, the Respondents have provided an inadequate description of the prisoners legal rights. See Smith Declaration, supra, ¶ ¶ 108 - 116. Between July 12 and 14, 2004, each prisoner was apparently

6

given a notice that they would be notified in the future what procedures are available to challenge their detention. See Olshansky Declaration, supra, ¶ ¶ 19 - 22. However, the Respondents did not seek to even attempt to explain these procedures until mid-December 2004. Id. These explanations, however, did not provide practical information which in any way enabled the prisoners to secure counsel in order to file a petition in court. See Olshansky Declaration, supra, ¶ ¶ 20-21. Some prisoners have not been allowed to obtain copies of the ECN notices, and/or were only allowed to review the form briefly. See Smith Declaration, supra, ¶ ¶ 108 - 116. Additionally, there are great problems, both cultural and lingual, leading to the fact that the notification is almost incomprehensible to the prisoners. See Smith Declaration, supra, ¶ ¶ 117 - 119. Lastly, many of the detainees are in poor physical and mental condition, and in combination to the fact that they are held incommunicado, it is almost impossible for the prisoners to contact the outside world. See Olshansky Declaration, supra, ¶ 22.

The Respondents insist that more information be supplied by the next friends, however this would cause a tremendous delay in securing legal assistance for the prisoners. See Smith Declaration, supra, ¶ ¶ 120 - 125. Lastly, there should be no concern that a prisoner would be provided with counsel in a case where he does not want it, as there is a system in place whereby counsel must secure an "Acknowledgment of Representation" form signed by the prisoner. See Smith Declaration, supra, ¶ 126.

Among the factual questions left unanswered are (1) whether Ahmed Doe personally received notice of his right to file a habeas petition, (2) whether (assuming he received the notice) he understood its contents, (3) whether he know and understood the requirements for preparing and

filing a habeas petition, and (4) whether he was permitted to send and receive mail. Denial of Respondents' Motion will obviate the necessity of addressing and answering these questions (and others) that must be answered before determining whether Ahmed Doe has had realistic "access" to this Court to file a habeas corpus petition.

### V.     Respondents' Motion for a Stay should be denied as it is unreasonable

Respondents argue that, in the alternative, this Court should stay Ahmed Doe's case until the "resolution of all appeals" in three cases pending in the Federal District Court for the District of Columbia (See, Respondents Motion at 5, 15). This would include any proceedings in the United States Supreme Court following the Court of Appeals' decision of the appeals argued on September 8, 2005. Over a year has passed since the Supreme Court held that "§ 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base." *Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). Upon information and belief, the prisoners, including Mr. Ahmed Doe, have now been detained for more than three years. The stay requested by the Respondents is, under the circumstances, unreasonably long and should be denied.

## CONCLUSION

Respondents' Motion for Order to Show Cause challenging Mr. Deghayes' Next Friend standing should be denied. Undersigned counsel should be granted the opportunity to meet with Mr. Ahmed Doe as soon as possible to obtain his authorization of representation, which would render Respondents' Motion moot. Respondents' alternative request for a stay should be denied, as this request is unreasonable.

Respectfully submitted,

   /s/ Kevin G. Boris
Kevin G. Boris
Louis A. Ruprecht
RUPRECHT, HART & WEEKS, LLP
306 Main Street
Millburn, NJ 07041
Tel.: 973-379-2400
Fax: 973-379-2446
kboris@rhwlawfirm.com

*Counsel for Petitioners Ahmed Doe and Omar Deghayes*

Of Counsel
Barbara Olshansky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel.: 212-614-6439
Fax: 212-614-6499

Dated: September 12, 2005