IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED DOE, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )     Civil Action No. 05-CV-1458 (ESH) |
| | ) |
| GEORGE W. BUSH, | ) |
| President of the United States, | ) |
| *et al.,* | ) |
| | ) |
| Respondents. | ) |
| | ) |
| ADIL BIN MUHAMMAD AL | ) |
| WIRGHI, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )     Civil Action No. 05-CV-1497 (RCL) |
| | ) |
| GEORGE W. BUSH, | ) |
| President of the United States, | ) |
| *et al.,* | ) |
| | ) |
| Respondents. | ) |
| | ) |
| NABIL (Last Name Unknown), *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )     Civil Action No. 05-CV-1504 (RMC) |
| | ) |
| GEORGE W. BUSH, | ) |
| President of the United States, | ) |
| *et al.,* | ) |
| | ) |
| Respondents. | ) |
| | ) |

| | |
|---|---|
| )<br>ABBAR SUFIAN AL HAWARY, *et al.*,　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　Petitioners,　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　v.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>GEORGE W. BUSH,　　　　　　　)<br>　　　President of the United States,　)<br>　　　*et al.,*　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　Respondents.　　　　　　)<br>　　　　　　　　　　　　　　　　) | Civil Action No. 05-CV-1505 (RMC) |
| )<br>SHAFIIQ (Last Name Unknown), *et al.*,　)<br>　　　　　　　　　　　　　　　　)<br>　　　　Petitioners,　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　v.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>GEORGE W. BUSH,　　　　　　　)<br>　　　President of the United States,　)<br>　　　*et al.,*　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　Respondents.　　　　　　)<br>　　　　　　　　　　　　　　　　) | Civil Action No. 05-CV-1506 (RMC) |
| )<br>JAMAL KIYEMBA, *et al.*,　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　Petitioners,　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　v.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>GEORGE W. BUSH,　　　　　　　)<br>　　　President of the United States,　)<br>　　　*et al.,*　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　Respondents.　　　　　　)<br>　　　　　　　　　　　　　　　　) | Civil Action No. 05-CV-01509 (RMU) |



)
HAMID AL RAZAK, *et al.*,                                    )
                                                            )
      Petitioners,                                     )
                                                            )
      v.                                              )     Civil Action No. 05-CV-1601 (GK)
                                                            )
GEORGE W. BUSH,                                             )
    President of the United States,                     )
    *et al.,*                                           )
                                                            )
      Respondents.                                     )
                                                            )
                                                            )
SADAR DOE, *et al.*,                                        )
                                                            )
      Petitioners,                                     )
                                                            )
      v.                                              )     Civil Action No. 05-CV-1704 (JR)
                                                            )
GEORGE W. BUSH,                                             )
    President of the United States,                     )
    *et al.,*                                           )
                                                            )
      Respondents.                                     )
                                                            )

### RESPONDENTS' REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RELATED APPEALS

Petitioners' opposition memoranda[1] contain an array of misguided arguments and unfounded accusations that fail to rebut the central premise of respondents' motion for order to show cause – petitioners must establish that they have proper standing to sue before the Court can exercise jurisdiction over the above-captioned cases, and petitioners have yet to do so here.

---

[1]  Because the oppositions to respondents' motion for order to show cause filed in the above-captioned cases are substantially similar, respondents are filing this consolidated reply.

The current and former detainees who seek habeas relief on behalf of other individuals detained

at Guantanamo Bay have not demonstrated that they possess proper "next friend" standing under

the two-pronged standard articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S.

149, 163-64 (1990).  Petitioners attempt to circumvent this critical requirement by complaining

that respondents' conduct somehow necessitated these jurisdictionally deficient petitions, which

should thereby compel the Court to ignore established precedent and excuse petitioners from the

next friend standing requirements.  Petitioners' position, however, lacks both factual and legal

merit.  Petitioners bear the burden of establishing why the above-captioned petitions for writ of

habeas corpus, not directly authorized by the particular detainees at Guantanamo Bay for whom

habeas relief is sought, but instead brought by other detainees claiming to act as their "next

friends," should not be dismissed for lack of proper next friend standing.  Absent proper standing

to sue, these cases should be dismissed for lack of jurisdiction.

Even if the above-captioned cases are not dismissed, the cases nonetheless should be

stayed pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-

1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-

5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-

0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No.

05-5064 (D.C. Cir. Mar. 10, 2005).  The pending appeals will address the core issues in these

cases and, thus, determine how these cases should proceed, if at all.  Further proceedings,

including the submission of factual returns, would require the expenditure of significant judicial

and other resources that may be avoided as a result of the appeals, and, in any event, such

proceedings very likely would have to be revisited or relitigated once the appeals are decided and

the Court of Appeals provides guidance regarding handling of the claims in all of the

Guantanamo detainee cases.

## **ARGUMENT**

I.    **Petitioners Have Failed to Establish Proper "Next Friend" Standing in the Above-Captioned Cases.**

The current and former detainees claiming to act as "next friends" for other detainees on

whose behalf habeas relief is sought in these cases bear the burden of establishing proper

standing to sue as a prerequisite to the Court's exercise of jurisdiction over their petitions.

See Elk Grove Unified School District v. Newdow, 124 S. Ct. 2301, 2308 (2004) ("In every

federal case, the party bringing the suit must establish standing to prosecute the action."); Warth

v. Seldin, 422 U.S. 490, 517-18 (1975) ("The rules of standing, whether as aspects of the Art. III

case-or-controversy requirement or as reflections of prudential considerations defining and

limiting the role of the courts, are threshold determinants of the propriety of judicial

intervention.").  To establish standing in these "next friend" cases, therefore, petitioners must

demonstrate that (1) the detainees for whom habeas relief is sought — the real parties in interest

— cannot challenge the legality of their detention themselves; and (2) the purported "next

friends" have a significant relationship with each detainee to show that they are truly dedicated to

each detainee's best interests.  See Whitmore, 495 U.S. at 163-64.  Petitioners have yet to satisfy

either requirement.

As explained in the declarations submitted in support of respondents' motion, as well as

in the updated (Second) Declaration of Frank Sweigart, attached hereto as Exhibit A, respondents

have provided every detainee with adequate means and opportunity to file a habeas petition in

- 3 -

order to meaningfully challenge the lawfulness of his detention.  The Department of Defense

("DoD") has notified each of its detainees at Guantanamo Bay of his right to file a petition for

habeas corpus ("You may ask a civilian judge to look at the lawfulness of your detention . . ."),

and has provided each detainee with the address of the United States District Court in the event

that he desires to submit his own petition to the Court.  See (Second) Declaration of Frank

Sweigart, ¶¶ 3-5.  Although petitioners would like the Court to believe that the detainees are

being held "incommunicado," in fact, all detainees possess the opportunity to send and receive

mail through the Military's mail delivery and collection system or through the International

Committee for the Red Cross.  See id., Ex. D.  As a result, all detainees may write to friends,

family members, or attorneys to request assistance with filing a habeas petition, if they so desire,

or they may write and send a *pro se* petition to the Court themselves, as many detainees have.

Petitioners have submitted no evidence that the detainees who are purportedly seeking habeas

relief in the above-captioned cases are unable to take advantage of these opportunities.

Moreover, DoD has taken affirmative steps to facilitate legal representation for detainees who

have indicated a desire to challenge the legality of their detention by providing them with a form

to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit

volunteer counsel for detainees desiring representation.[2]  See (Second) Sweigart Declaration, ¶ 7.

---

[2]  Petitioners in Nabil, Al Hawary and Shafiiq contend that respondents "now freely
acknowledge that [detainees] are entitled to be represented by counsel for purposes of seeking a
writ of habeas corpus."  See, e.g., Nabil Opp. at 1.  By facilitating these detainees' ability to
acquire legal representation, however, respondents have not conceded in any way that all
detainees have a "right" to counsel.  In Al Odah v. United States, 346 F. Supp. 2d 1 (D.D.C.
2004), the Court explained that, despite there being no absolute right to counsel under the habeas
statute, the Court, under its discretionary authority, may appoint counsel to represent detainees if
warranted.  Id. at 8.  Neither the Court's decision in Al Odah nor respondents' delivery of the
ABA Notification imposes an obligation on respondents, or the Court, to automatically assign

The ABA Notification is not a list of counsel "approved" by respondents, as petitioners erroneously suggest, but merely a notice delivered as mail to detainees who indicate that they wish to challenge their detention, informing them that an independent organization is willing to provide them with legal assistance.  See id.  Petitioners cannot reasonably argue that the detainees at Guantanamo Bay are unable to seek habeas relief when scores of cases involving well over 200 detainees are pending before the Court,[3] including 55 *pro se* petitions that detainees mailed directly to the Court, and at least 17 petitions filed as a result of detainees initiating direct contact with counsel.[4]  Based on this record, and absent any credible and specific evidence to the contrary, petitioners have yet to satisfy the first prong of the Whitmore test.[5]

---

counsel to every detainee at Guantanamo Bay regardless of a detainee's desire to pursue legal recourse in court.

[3]  There are presently 154 cases pending before the Court on behalf of approximately 283 petitioners, although this number includes detainees who filed multiple petitions.  Respondents have also been unable to identify more approximately two dozen of these petitioners as detainees at Guantanamo Bay.

[4]  In its motion for order to show cause, respondents erroneously listed Khandan v. Bush, No. 05-CV-1697 (PLF), as a petition authorized through direct contact with counsel.  See Resps' Mot. at 8, n. 6.

[5]  Petitioners improperly blame respondents for certain "unanswered factual questions" regarding the circumstances under which the detainees for whom habeas relief is sought were notified of their ability to seek habeas relief.  Not only does this ignore that it is *petitioners'* burden to establish that these detainees are unable to challenge the legality of their detention so as to justify next friend standing in these cases, see Whitmore, 495 U.S. at 154 ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue . . ."); id. at 163 ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."), it disregards the fact that a large number of *pro se* and other petitions have been filed in response to the notices provided to detainees regarding their ability to contact the Court or others to pursue habeas relief.

The purported "next friends" in the above-captioned cases have also yet to demonstrate that they have a "significant relationship" with each detainee such that they are "truly dedicated to the[ir] best interests." See Whitmore, 495 U.S. at 163-64. Aside from some skimpy "authorizations" attached to the petitions that suggest nothing more than that the purported next friends are aware of other individuals detained at Guantanamo Bay, petitioners have not provided any evidence to show that the detainees seeking "next friend" status have any sort of "significant relationship" with the detainees on whose behalf they claim to seek habeas relief.[6] The Court is left with no basis from which to conclude that these so-called next friends know the other detainees in any meaningful way so as to ensure that they will genuinely pursue the other detainees' desires and interests, which is one of the primary motivations behind the next friend standing doctrine. See Whitmore, 495 U.S. at 164 ("These limitations on the 'next friend' doctrine are driven by the recognition that it was not intended that the writ of habeas corpus should be availed of, as a matter of course, by intruders or uninvited meddlers, styling themselves next friends.") (internal quotations omitted). Absent proof that evidences a significant

---

[6]  Former detainee Moazzam Begg's supplemental declaration in Al Wirghi v. Bush, No. 05-CV-1497 (RCL), which cites one brief and isolated encounter between Mr. Begg and petitioner Adil Bin Muhammad Al Wirghi in November 2004, does not establish the type of meaningful significant relationship that would justify next friend standing in this case. See Al Wirghi Opp., Ex. 1. Similarly, the memorandum attached to the September 8, 2005 Declaration of Sabin Willett filed in Kiyemba v. Bush, No. 05-CV-1509 (RMU), which provides only rough physical descriptions and possible camp locations of the detainees for whom habeas relief is sought, is also insufficient to demonstrate the existence of a significant relationship that would serve to invoke the Court's jurisdiction. See Kiyemba Opp. at 9. Moreover, to the extent that counsel argue that assertions by other detainees, Abu Bakker Qassim and Adel Abdul Hakim, prove that the Kiyemba detainees desire to challenge the legality of their detention, such information has no bearing on whether Jamal Kiyemba, the purported next friend in that case, possesses a significant relationship to the detainees on whose behalf he is seeking habeas relief.

relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petitions in the above-captioned cases.

Because petitioners have not satisfied either requirement for next friend standing as articulated by the Supreme Court in <u>Whitmore</u>, petitioners seek to blame respondents for their own failures by asserting baseless accusations of respondents' allegedly obstructionist behavior which supposedly left petitioners with no recourse but to file jurisdictionally deficient petitions. For instance, petitioners complain that respondents' own notification to detainees advised them that they could "ask a friend" to file petitions on their behalf without also informing them that certain jurisdictional requirements must also be met, and that counsel have been unable to identify family members who can act as next friends because respondents refuse to give them a list of all detainees at Guantanamo Bay.  Knowledge of the next friend standing requirements and counsel's ability, or lack thereof, to locate detainees' family members is of no consequence. Petitioners cannot escape the fundamental legal principle that "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action."  <u>Elk Grove Unified School District v. Newdow</u>, 124 S. Ct. 2301, 2308 (2004).  As demonstrated above, all detainees may write to friends, family members, or attorneys to request assistance with filing a habeas petition, or they may submit a *pro se* petition to the Court themselves.  Counsel for petitioners in the above-captioned cases chose to file petitions through other detainees purporting to act as next friends,[7] and now petitioners bear the burden of establishing that these current and former

---

[7] Respondents do not take the position that detainees can *never* act as proper next friends to other detainees, but argue only that the detainees who purport to do so in these cases must establish their next friend status as a precondition to the Court's exercise of jurisdiction.  Thus, respondents' acknowledgment that other detainees may serve as "legitimate next friends" in their motion to dismiss filed in <u>John Does 1-570 v. Bush</u>, No. 05-CV-0313 (CKK), is not inconsistent

detainees who seek habeas relief on behalf of other individuals detained at Guantanamo Bay possess proper next friend standing under the Supreme Court's <u>Whitmore</u> test.

Petitioners further contend that respondents' challenge to proper next friend standing in these cases serves only to needlessly delay proceedings since the detainees for whom habeas relief is sought are likely to challenge their own detention anyway. Petitioners erroneously assume, however, that all of the detainees at Guantanamo Bay want to challenge the legality of their detention, and cannot do so simply because respondents have prevented them from doing so. The facts demonstrate otherwise. As explained above, DoD has notified each detainee of his right to challenge the legality of his detention, and with their mail privileges, the detainees are free to seek assistance from friends, family, and attorneys to pursue habeas relief or to send their own habeas petition to the Court themselves. <u>See</u> (Second) Sweigart Declaration, ¶ 3-5. The fact that scores of cases involving well over 200 detainees are pending before the Court establishes that respondents have not confined the detainees in conditions that preclude them from vindicating their right to challenge the lawfulness of their detention and confirms that the detainees can effectively access the courts and counsel if they choose to do so. While

---

with respondents' challenge to next friend standing here. Respondents also note that the recent and rising trend of detainees, such as Omar Deghayes, submitting next friend "authorizations" containing long lists of any other detainees that they can remember having contact with, without even attempting to satisfying <u>Whitmore</u>'s jurisdictional requirements, is wholly improper. Counsel's promotion of such practices, as well as their complaint that DoD has not provided them a list of all Guantanamo detainees, demonstrate that counsel seek through next friend cases such as these merely to further the cause of bringing habeas petitions on behalf of every detainee they learn about regardless of a detainee's particular wishes or the available avenues for detainees to initiate habeas suits themselves. <u>See infra</u>.

respondents have not prohibited detainees from exercising their legal rights,[8] respondents also do not have any obligation to actively prod these detainees to take advantage of their ability to file habeas petitions in U.S. courts. Some detainees simply may not want the U.S. courts to review the legality of their detention.[9] Petitioners' insinuation that respondents' motion for order to show cause is solely an effort to obstruct detainees from challenging the legality of their detention is preposterous. It is petitioners who have yet to satisfy basic requirements regarding their standing to sue in the above-captioned cases and now attempt to sidestep the jurisdictional issue by blaming respondents for raising it at all. It is well-established that petitioners must

---

[8] The Declaration of Clive A. Stafford Smith, submitted in support of petitioners' opposition memoranda in several of the above-captioned cases, attempts to malign respondents' actions in virtually every aspect of the detention of individuals at Guantanamo Bay and the litigation of the detainees' petitions for habeas corpus. Mr. Smith, who represents all of the improper next friends in the above-captioned cases, bases his lengthy diatribe on nothing more than various generalized allegations by unspecified detainees and non-specific hearsay. In particular, his accusations that respondents have intentionally interfered with detainees' access to counsel so as to discourage them from seeking habeas relief and prohibiting attorneys from visiting Guantanamo Bay are patently false. While respondents do not allow unauthorized attorneys to travel to Guantanamo Bay to solicit detainees, many legitimately retained attorneys have complied with the counsel access procedures contained in the Protective Order and have visited Guantanamo Bay to meet with their detainee clients. The claim that military personnel are attempting to undermine the relationship between detainees and their attorneys has already been squarely rebutted by a sworn declaration in the Al Odah case. See Declaration of Esteban Rodriguez, filed on May 9, 2005 as Exhibit 2 to Respondents' Opposition to Petitioners' Motion for Writ of Injunction in Al Odah v. United States, No. 02-CV-0828 (CKK) (attached hereto as Exhibit B) ("The Department of Defense does not permit interrogators or other personnel to interfere with the relationship between any detainee and his lawyer. This would include a prohibition on impersonating a lawyer, on making disparaging comments about the lawyer, and on retaliating against a detainee for having met with a lawyer or being involved in habeas corpus litigation.").

[9] See, e.g., Declaration of Tony F. De Alicante, filed on May 6, 2005 as Exhibit C to Reply in Support of Respondents' Motion to Dismiss Petition in John Does 1-570 v. Bush, No. 05-CV-0313 (CKK) (stating that as of May 5, 2005, four different detainees refused to accept legal mail from their attorneys, and several have stated that they do not want to be represented by counsel).

demonstrate proper next friend standing under <u>Whitmore</u> in order for the Court to exercise jurisdiction over these petitions and for the cases to proceed in any fashion.

Thus, petitioners' suggestion that counsel should be allowed to visit the detainees for whom habeas relief is sought in order to discover if they desire to pursue habeas relief, and thereby render respondents' motion for order to show cause moot, effectively puts the cart before the horse.  Counsel cannot avail themselves of the counsel access procedures contained in the Protective Order until they first establish that proper jurisdiction over the case exists.  Counsel elected to file these petitions through other detainees purporting to serve as next friends, and are obligated to satisfy the requirements for next friend standing before any proceedings in these cases can move forward.  Whether the detainees later authorize representation by counsel as required by the Protective Order does not solve the threshold standing question.  Jurisdiction must be established and these cases must be properly before the Court before any proceedings may commence, including counsel visits to Guantanamo Bay.[10]

Finally, petitioners mistakenly elevate the difficulties noted by respondents in identifying petitioners as detainees at Guantanamo Bay to the primary basis for respondents' motion for order to show cause.  Respondents raise the identification issue because it is a problem arising

---

[10]  To the extent that counsel are requesting expedited processing of security clearances to facilitate visits to Guantanamo Bay, not only are such visits inappropriate until the threshold standing issue is resolved, but respondents have no control over the timing of security clearance applications.  Processing of security clearances for petitioners' counsel is handled by the offices of the Department of Justice, Litigation Security Division (i.e., the Court Security Officers), who process all applications for petitioners' counsel in the Guantanamo litigation in an expedited fashion. This process take time, however, given the large number of petitioners' counsel who have applied for security clearances across the more than 150 pending Guantanamo habeas cases and the burdens associated with the application process, including substantive background investigations.

out of the phenomenon of petitions filed by improper next friends, but it is not the reason why respondents filed their motion.[11]  Rather, respondents are requesting an order to show cause because petitioners have failed to demonstrate that they have proper next friend standing, without which the Court lacks jurisdiction over these cases.  Petitioners should not be excused from the requirements for next friend standing articulated by the Supreme Court in <u>Whitmore</u>.  If petitioners are unable to demonstrate that the petitions were filed by legitimate next friends, jurisdiction over the petitions is absent, and the petitions must be dismissed.

## II.    If the Court Does Not Dismiss the Above-Captioned Cases, They Should be Stayed Pending Resolution of the Appeals of Decisions in the Other Guantanamo Detainee Cases Adjudicating Common Issues.

If the Court finds that the petitions in the above-captioned cases were filed by legitimate next friends,[12] the Court should stay proceedings in these cases pending the resolution of the appeals in <u>Khalid</u>, <u>Boumediene</u> and <u>In re Guantanamo Detainee Cases</u>, which will determine whether and how these cases should proceed.  The petitions in these cases raise legal issues that were squarely addressed by the opinions in <u>In re Guantanamo Detainee Cases</u>, <u>Khalid</u>, and

---

[11]  Indeed, in cases where next friend standing was found not to exist, identification of the real party in interest was never in doubt.  <u>See</u>, <u>e.g.</u>, <u>Whitmore v. Arkansas</u>, 495 U.S. 149 (1990) (inmate unsuccessfully attempting to act as next friend on behalf of another identified inmate).

[12]  Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, the next friends should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought.  <u>See</u> Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u> (D.D.C. Nov. 8, 2004), § III.C. (permitting counsel in proper next-friend cases two visits with a detainee before an authorization of representation by the detainee must be provided to respondents).  At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in these cases, such that the cases can then either be converted into direct petitions or be dismissed.

Boumediene and that are raised in the appeals, including: (1) whether the petitioners have stated

valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the

procedures implemented by respondents to determine the status of petitioners violate their Fifth

Amendment rights; (2) whether the petitioners have stated valid claims under the Third Geneva

Convention;[13] and (3) whether the petitioners have stated valid claims based on various other

legal theories, including other Constitutional provisions, other international treaties, Military

regulations, the Administrative Procedure Act, the Alien Tort Statute, and customary

international law.[14] It makes no sense for proceedings related to the merits of these cases to go

forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals will

determine the legal analyses applicable to these cases and, indeed, whether and how these cases

should proceed.[15]

---

[13] In Hamdan v. Rumsfeld, 415 F.3d 33, 40 (D.C. Cir. 2005), the D.C. Circuit held that the Third Geneva Convention does not give rise to claims enforceable in court.

[14] Petitioners in Nabil, Al Hawary and Shafiiq contend that a stay is not appropriate in these cases because the petitions challenge the legality, and alternatively, allege the violation, of an Order of the President dated November 13, 2001. See, e.g., Nabil Opp. at 7 (citing Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001)). Petitioners' detention as enemy combatants is not pursuant to that Order, however; petitioners are detained pursuant to the President's general authority as Commander in Chief, the congressional Authorization for Use of Military Force, and the international law of war. Furthermore, to the extent that petitioners in these cases challenge the legality of the Order in permitting trials of certain detainees by military commission, the D.C. Circuit's decision in Hamdan v. Rumsfeld, 415 F.3d 33 (D.C. Cir. 2005), has already addressed such claims.

[15] Petitioners' opposition memoranda in Kiyemba and Sadar Doe contain a variety of allegations and arguments surrounding counsels' subjective belief that one or more petitioners in those cases has been determined not to be an enemy combatant. As respondents stated in their motion for order to show cause in Kiyemba, however, of the petitioners whom respondents have been able to arguably identify as of this date, all are held as enemy combatants. Further, as demonstrated by Respondents' Response to the Court's Order to Show Cause in Sadar Doe, filed September 21, 2005, both petitioners in that case are being held as enemy combatants.

In seeking a stay to the extent the next friend petitioners are determined to satisfy the applicable requirements, however, it makes no sense for the government to process and submit factual returns[16] with respect to petitioners when the D.C. Circuit will be considering the proper scope of these habeas proceedings, including whether the claims can be dismissed without reference to specific factual returns. See Khalid, 355 F. Supp. 2d 311 (dismissing petitioners' claims in their entirety). Even if counsel had access to factual returns, they would not be able to share classified information in the returns with petitioners. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), ¶ 30. Thus, there is no reason why counsel need access to factual returns at this time.[17]

Moreover, the submission of factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information. Each factual return must be obtained from the Department of Defense, and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. Respondents must then prepare both public and classified

---

[16] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the Combatant Status Review Tribunal that confirmed petitioner's status as an enemy combatant properly subject to detention. The factual return is separate from briefing on legal issues in the cases. Factual returns include both classified and unclassified material.

[17] In this vein, various Judges of this Court have declined to require factual returns during the pendency of the stay. See, e.g., Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 5); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Attash v. Bush, No. 05-CV-1592 (RCL) (dkt. no. 12).

versions of the factual returns for submission to the Court and counsel.  Each return can range

from dozens to hundreds of pages, depending upon the circumstances.  Thus, respondents face an

immense logistical burden to process and file the returns, especially on the short, simultaneous

schedules being requested by petitioners in the various cases.  Further, submission of these

returns vastly expands access to classified information contained in the returns, thereby

increasing the risks of inadvertent or other disclosure or compromise of the information.  These

burdens and risks, however, could be rendered completely unnecessary, depending on the

outcome of the appeals.  <u>Cf.</u> Order Denying Motion for Reconsideration of Order Granting Stay

Pending Appeal in <u>In re Guantanamo Detainee Cases</u>, 355 F. Supp. 2d 482 (staying cases so as to

avoid expenditure of "substantial resources" and imposition of "significant burdens" that might

not be necessary depending on outcome of appeal).

Although certain Judges of this Court have ordered respondents to submit factual returns

in cases that are otherwise stayed, respondents oppose the submission of factual returns in the

above-captioned cases for the reasons stated herein.  If the petitions are not dismissed for lack of

proper next friend standing and submission of factual returns were to go forward at all, it could

only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that

petitioners in all the recently filed cases are seeking factual returns and recognizing the logistical

burdens posed by an undertaking to produce returns in the cases.  In such circumstances, a

schedule for the rolling production of factual returns in these case (and potentially other cases)

over the next 10 to 12 weeks would be appropriate.  In a number of other recent cases, the

government has been given between 90 and 120 days to file factual returns, and respondents

request that the Court impose a similar schedule, if the Court determines that these cases are

- 14 -

properly filed and that factual returns should be provided.  See e.g., Al-Joudi, No. 05-CV-0301

(GK) (dkt. no. 26) (imposing 90-day schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt. no. 37)

(imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day

schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed,

No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-0714

(RBW) (dkt. no. 12) (imposing 120-day schedule).

## CONCLUSION

For the reasons stated, petitioners have not demonstrated proper next friend standing.

Even if petitioners are able to establish proper standing, the Court should stay further

proceedings in these cases, except as noted above, pending resolution of the appeals of Judge

Leon's decision in Khalid and Boumediene and Judge Green's January 31, 2005 decision in In re

Guantanamo Detainee Cases.


Dated: September 22, 2005                    Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             KENNETH L. WAINSTEIN
                                             United States Attorney

                                             DOUGLAS N. LETTER
                                             Terrorism Litigation Counsel

                                                /s/ Preeya M. Noronha
                                             JOSEPH H. HUNT (D.C. Bar No. 431134)
                                             VINCENT M. GARVEY (D.C. Bar No. 127191)
                                             TERRY M. HENRY
                                             JAMES J. SCHWARTZ
                                             PREEYA M. NORONHA
                                             ROBERT J. KATERBERG
                                             NICHOLAS J. PATTERSON

- 15 -

ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents