Fifth Amendment and the Bill of Rights. Section 2241 (c)(1) embodies the common law protection of individual liberty – the right to independent judicial review of executive detention to ensure that no person is deprived of liberty by authority of the federal government without the protections of due process of law.

Habeas Corpus, as originally enacted in the Judiciary Act of 1789 and as it exists under Section 2241 (c)(1) today, guarantees to every person detained under federal authority to whom the writ extends to the right to judicial review of the legality of the detention. As Chief Justice Marshall explained in *Ex parte Watkins*, 28 U.S. 193, 202 (1830):

> [H]abeas corpus is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error, to examine the legality of the commitment.

On numerous occasions the Supreme Court has made it clear that the weight of the Great Writ overwhelms procedural irregularities.

In *Frank v. Magnum*, 232 U.S. 309, 346-350 (1915) Justice Holmes, dissenting, indicated his displeasure over the majority's adherence to procedural regularity when the fairness of a criminal trial was at stake. The trial of the defendant-Petitioner was occasioned by a display of extraordinary public bitterness directed to the defendant. While his *Habeas* petition was procedurally wanting, Justice Holmes opined that the Petition should have been entertained, as protecting due process from the influence of mob rule was more important than honoring procedural bars.

12

In *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969), Justice Fortas wrote for the Court.

> The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended...." ...The scope and flexibility of the writ – its capacity to reach all manner of illegal detention – *its ability to cut through barriers of form and procedural mazes* – have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected. (emphasis added)

IV.  Petitioner Ahmed Doe and "Next Friend" Acted According to Respondents' Own Directions

Respondents attached to their Motion for an Order to Show Cause, and Petitioner attached to his opposition, a Declaration of Frank Sweigart, in which he explains the "steps taken by the Department of Defense to notify detainees (at Guantanamo) of their right to challenge the legality of their detention by filing *habeas corpus* petitions in Federal Court." (Respondents' Motion, "Exhibit B")

Sweigart declares that in December, 2004, the Department of Defense began to notify detainees of their post – *Rasul* right to file a petition. He further declares that "the notification tells the detainees that they have the option of <u>asking a friend</u>, family member, or lawyer to file a petition on their behalf" (emphasis added, ¶ 3). As the Petition of Ahmed Doe plainly shows, this is precisely what Petitioner did - - he asked a friend, in this case a fellow detainee Omar Deghayes, to obtain a lawyer to assert any legal right he may have. (See "Exhibit A"; attached to the Petition.)

13

Attached to the Sweigart Declaration is a copy of the very "Notification" which Mr. Sweigart declares was distributed to the Guantanamo detainees. It states, at paragraph 6:

> You may ask a civilian judge to look into the lawfulness of your detention through a process called a *petition for a writ of habeas corpus*. <u>You may ask a friend</u> or a family member or a lawyer to file such a petition with the court.
> (underlining added)

As stated above, this is precisely what Petitioner Ahmed Doe did. It is to be noted that the "Notification" did not require the inmate to "ask a friend whose status is in accord with federal statutes or whose qualifications are consonant with the *Whitmore* guidelines." It offered legal recourse to a civilian court by asking a friend or a lawyer to file a petition.

There is no principle of logic which dictates that since some detainees filed through a "next friend" and others filed <u>pro se</u>, those who filed by the former method have or should have any less legal legitimacy than those who filed by the latter. Both methods were advised or recommended by Respondents. Nor does it seem obligatory or necessary for Petitioner to "demonstrate" why he did not file a petition *pro se* (suggested in Respondents' Motion, p. 7). Surely, neither method is privileged over the other, nor can Petitioner's "failure" to file *pro se* possibly substantiate a conclusion that he is any less desirous of challenging his detention (possibly for the remainder of his natural life) than those who filed by other methods. It stains the imagination to suppose that Ahmed Doe, who may or may not speak English, who may or may not be literate, who likely does not know what *Habeas Corpus* means, who has no familiarity with the

14

American legal system and who has no knowledge how to file a paper in Federal District Court could possibly proceed *pro se*.

Respondents are not only bound by the very procedures they offered to Guantanamo prisoners, but, until quite recently, Respondents have explicitly admitted the propriety of fellow detainees acting as legitimate "next friends" without regard to the fulfillment of the *Whitmore* guidelines. See Respondents' Motion to Dismiss in *John does 1-570 v. Bush*, 05-CV-0313 (CKK) (D.D.C.) at pp 15-16. In that Motion, Respondents disputed an attempt by attorneys to pursue a petition for *Habeas Corpus* on behalf of 570 nameless inmates at Guantanamo and moved for dismissal, citing *Whitmore* for the principle that the attorneys had not been authorized by the nameless inmates and lacked a significant relationship with them. To distinguish and disparage this *John Doe* attempt at representation, Respondents argued that the "vast majority of these detainees have filed petitions through other individuals acting as *legitimate next friends* – family members, an attorney who already represented the detainee in pending military commission proceedings, *and fellow detainees*." (Emphasis added.) In this case, however, Respondents take the contrary, indeed contradictory, position and now seek to challenge that which they previously argued was proper method for a prisoner's right to obtain access to the court.

> V.  The Respondents' Conduct and the Circumstances of Ahmed Doe's Detention Provide Cause for the Court to Excuse Any Alleged Defects In His Allegations of Standing And to Order Respondents to Cooperate In Affording Counsel An Opportunity to Consult With Ahmed Doe and His Next Friend, Omar Deghayes

15

Petitioners have demonstrated standing under *Whitmore*. But if there are lingering concerns, these should be excused because they were caused by the Respondents.

The Great Writ excuses procedural irregularities because it "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose – the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Peyton v. Rowe*, 391 U.S. 54, 66 (1968) (citations omitted). In *Harris v. Nelson*, the Supreme Court instructed:

> The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended...." ...The scope and flexibility of the writ – its capacity to reach all manner of illegal detention – *its ability to cut through barriers of form and procedural mazes* – have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

394 U.S. 286, 290-91 (1969)(emphasis added).

As this Court is well aware, prisoners seeking *habeas* relief ordinarily fall into two categories, (1) federal prisoners, under 28 U.S.C. § 2255, and (2) state prisoners, under 28 U.S.C. § 2254. Unlike the Guantanamo detainees, traditional prisoners are afforded a wide variety of rights and protections: they are informed of the crime they are charged with; they are represented by counsel; they are tried by a jury of their peers; they have an appeal; and they have procedural remedies to challenge their incarceration.

16

Yet, after all of these procedural protections, the Great Writ is still available to traditional prisoners in appropriate circumstances.[1]

Even more remarkably, in *habeas* cases arising under 28 U.S.C. §§ 2254 and 2255 the federal courts can excuse procedural defects that would otherwise defeat jurisdiction if cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *United States v. McKie* 73 F.3d 1149, 1154, (D.C. Cir. 1996). Under the cause and prejudice test, a petitioner demonstrates cause by showing "that some objective factor external to the defense impeded efforts to comply with the State's procedural rule". *High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005) (quoting *Pizzuto v. Arave*, 280 F.3d 949, 975 (9th Cir. 2002)). "Thus, cause is an external impediment *such as government interference* or reasonable unavailability of a claim's factual basis." *Id.* (emphasis added); *see also Lattimore v. DuBois*, 152 F.Supp. 2d 67, 81 (D. Mass. 2001) (trial court's failure to appoint counsel, conduct hearing and require pleadings constituted objective factor impeding procedural compliance), *rev'd on other grounds*, 311 F.3d. 46 (1st Cir. 2002); *Bliss v. Lockhart*, 891 F.2d 1335, 1342 (8th Cir. 1989) (finding cause, prejudice and potential miscarriage of justice excused procedural default).

---

[1] An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the *applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant.*

28 U.S.C. § 2254(b)(1)(emphasis added).

17

If this Court can excuse procedural defects that would otherwise deprive it of jurisdiction in traditional *habeas* cases where the prisoners have been afforded many procedural protections, then surely this Court has a similar power here where prisoners have been afforded no such protections.

There is no doubt that cause exists here to excuse any technical defects or information gaps in Ahmed Doe's Petition. If such gaps exist, they are a direct result of the external circumstances created by the Respondents, who control all of the circumstances of Ahmed Doe's incarceration and all of the information available concerning Ahmed Doe.

But in fact, it is not necessary that procedural defects be excused. Rather, to the extent there are any lingering question about standing, these questions can be removed if this Court simply requires the consultative process to proceed. The opportunity for Ahmed Doe to consult directly with counsel would assure that he understands the rights available to him and would allow counsel to obtain Ahmed Doe's written instructions. In this way, the Court can be assured that Ahmed Doe has made an informed decision, rather than having to infer that Ahmed Doe does not want counsel and wishes to stay in detention indefinitely, as the Respondents would have.

Respondents themselves confirm the reasonableness of allowing the consultative process to proceed:

> Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, the next friends should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought. (*citations omitted*)...(permitting counsel two visits with a detainee before an

authorization of representation by the detainee must be provided to respondents.) *At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in these cases, such that the cases can then either be converted into direct petitions or be dismissed.*

      Respondents' Motion to Show Cause, footnote 12. Emphasis added.

## CONCLUSION

For all these reasons, or any one of them, the *Habeas Corpus* Petition should not be dismissed for lack of proper "next friend" standing.

Dated: November 18, 2005

                                Respectfully submitted,

                                /s/ Kevin G. Boris
                                _____

Kevin G. Boris
Louis A. Ruprecht
RUPRECHT, HART & WEEKS, LLP
306 Main Street
Millburn, NJ 07041
(973) 379-2446

Of Counsel:
Barbara Olshansky (NY0057)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

**Counsel for Petitioners Ahmed Doe and Omar Deghayes**

19

## CERTIFICATE OF SERVICE

I certify that on November 17, 2005 I served a copy of the foregoing document to the following by Electronic Service

Preeya Noronha, Esq.
United Stated Department of Justice
Civil Division, Federal Programs Branck
20 Massachussetts Ave., N.W. Room 7144
Washington, DC 20530
preeya.noronha@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Ahmed "Doe", et al<br><br>      Petitioners,<br><br>v.<br><br>GEORGE W. BUSH,<br>    President of the United States,<br>    *et al.*,<br><br>      Respondents. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-CV-1458 (ESH)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF KEVIN G. BORIS

Declarant, KEVIN G. BORIS, comes now upon penalty of perjury and declares that the following is true and correct to the best of his knowledge, recollection and belief:

1. I am an attorney duly licenced to practice law in the State of New Jersey, and the United States District Court District of New Jersey.

2. I make this Declaration in support of Petitioner's Memorandum Showing Cause why the Petition should not be dismissed for lack of "next friend" standing.

3. I am co-counsel with The Center for Constitutional Rights, 660 Broadway, New York, New York, in the representation of Petitioner, Ahmed Doe.

4. My law firm was put into contact with the Center for Constitutional Rights, who advised that we could volunteer our legal services in the representation of Guantanamo inmates on a pro bono basis, to which we agreed.

5. On or about July 11, 2005, Louis A. Ruprecht, Esq., of my firm filed a Petition for Writ of *Habeas Corpus* for petitioner Ahmed Doe, via the legal avenue of "Next Friend" Omar Deghayes, and attached Mr. Deghayes authorization as "Exhibit A" to said Petition.

6. After filing the *Habeas* Petition for Ahmed Doe, Louis A. Ruprecht and myself contacted the Department of Justice for an application for security clearance to enable us to visit Guantanamo to visit personally with Petitioner. Said applications were completed and transmitted to the Department of Justice on or before September 23, 2005. Mr. Ruprecht and I have both recently been interviewed by the F.B.I. in connection with this application, but to date we have not received clearance and are thus unable to visit Petitioner Ahmed Doe in person at Guantanamo. I am advised that proposed visits to Guantanamo require at least 20 day prior notice, thus making a first visit to personally interview Ahmed Doe improbable until December or January at best.

7. No factual Return or Answer has been submitted by Respondents.

8. No Protective Order has been entered in this case and I am unable at present to enter into attorney-client correspondence with Petitioner Ahmed Doe.

9. I am thus considerably handicapped in providing this Court with first-hand information about the personal desires of Petitioner Ahmed Doe but, until then, for the foregoing reasons, I have no reason to doubt his desire for legal representation, expressed through the letter of this next friend, nor do I have any reason to doubt that the next friend does not have the actual legal interests of Petitioner in mind.

10. I can and do promise this Court that, upon visits with my client, if he communicates his decision that I should not represent him, that no one should represent him, or that he desires other counsel than the undersigned, I will abide by that decision and communicate it to co-counsel and to this Court.

FURTHER DECLARANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 18 November, 2005

_____
Kevin G. Boris