UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Ahmed "Doe", *et al.,*                     )
                                           )
    Petitioner,                         )
                                           )     Case No. **05-CV-1458 (ESH)**
    v.                                  )
                                           )
George W. Bush,                            )
President of the United States, et al.,    )
                                           )
    Respondents.                        )

---

## OPPOSITION TO MOTION TO VACATE THE DISTRICT COURT ORDERS AND DISMISS THE HABEAS PETITIONS FOR LACK OF JURISDICTION

---

    The petitioners, through counsel, oppose the Respondents' Motion to Vacate the District Court Orders and Dismiss the Habeas Petitions for Lack of Jurisdiction. At the time each petitioner filed his pro se petition, the District Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466 (2004). Since that time, the Respondents have claimed that intervening statutes have deprived the District Courts of jurisdiction, a position the petitioners contest based on an array of factual and legal arguments. The Respondents now request that the underlying petitions should be dismissed, without the opportunity to persuade the District Court that the particular case is viable and to make a record for appellate and Supreme Court review.

1

The Respondents' position is untenable for six reasons: A) the *Boumediene* case is not final nor is it dispositive given the statements of Justices Stevens and Kennedy regarding the need to exhaust remedies; B) under *Rhines v. Weber*, 541 U.S. 269 (2005), the procedure for addressing a pending petition while remedies are exhausted is for the District Court to stay the proceedings and hold them in abeyance pending exhaustion; C) under *United States v. UMW*, 330 U.S. 258, 290-91 (1946), while the Supreme Court rules on the jurisdictional questions, the lower courts have "authority from the necessity of the case to make orders preserving existing conditions and the subject of the petition;" D) the stay-and-abey procedure is especially appropriate in the context of orders granted by the District Court to safeguard against violations of the Convention Against Torture; E) the norm is for motions to dismiss to be litigated from a final order of the District Court; and F) the petitioners are not bound by the record established to date in *Boumediene*.

A.    ***Boumediene* Is Not Final Because The Denial Of Certiorari Was Based In Part On The Failure To Exhaust Remedies, Which Are Still Available To Those Petitioners.**

On February 20, 2007, a split panel of this Court decided combined cases involving aliens detained at Guantanamo, finding that post-*Rasul* statutes deprived courts of jurisdiction. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because the petitioners declined to seek review directly with this Court under the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007). The statement of Justices Kennedy and Stevens found

2

that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'"

The Respondents' reliance on *Boumediene* is misplaced for several reasons. First, the petitioners in that case have filed for reconsideration regarding the disposition of that case. Because the mandate has not issued, the litigation is not final. Second, the petitioners have already filed for DTA relief or will be doing so in the near future. The Court has the simple and Supreme Court-approved "recourse" in these cases to allow exhaustion while the district court proceedings are stayed pending the DTA litigation. Third, the dismissal of the District Court proceedings, with their web of protective orders and rulings on issues necessary to the maintenance of litigation, would constitute exactly the type of prejudice to the petitioners' ability to litigate that Justices Kennedy and Stevens instructed that the courts should guard against. As such, the motion to dismiss should be denied because it is premised on an incorrect reading of *Boumediene*.

> **B.  Because Exhaustion Of Remedies Is Available To The Present Petitioners, The District Courts Have Discretion To Enter Stay-And-Abey Orders, Which Are Mandatory By Analogy To *Rhines v. Weber*, 541 U.S. 269 (2005).**

Given the need to exhaust remedies under the Detainee Treatment Act of 2005, the District Court proceedings should continue to be stayed and held in abeyance pending completion of the

3

petitioners' DTA review directly in this Court. In *Rhines v. Weber*, 541 U.S. 269 (2005), the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system and unexhausted claims. Given the major procedural risks of a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. In the absence of intentional dilatory tactics by the petitioner, "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The conditions under which failure to stay-and-abey would constitute an abuse of discretion – no deliberate delay, good cause, and potentially meritorious claims – are abundantly present in this case. The petitioners have been attempting to move forward, while the Respondents have obtained stays of over 18 months. Unlike the death penalty cases that caused the Supreme Court concern in *Rhines*, every day of delay prejudices the petitioners.[1]

There is also good cause for the failure to exhaust until now: the potential remedy did not exist until after the habeas corpus petition was filed and did not purport to provide the habeas relief to which the petitioner was entitled at the time the habeas action was filed. In *Pace*, the Court noted

---

[1] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Stevens, J., concurring, joined by Justices Ginsburg and Breyer).

that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantanamo detainees face complexities that are similar and worse. The questions left open in the Supreme Court's decision in *Rasul*, which established a right to proceed under § 2241 at the time the petitioner submitted his documents,[2] and the subsequent Detainee Treatment Act of 2005 and Military Commission Act of 2006, have resulted in major complications. The petitioners did not even have the potential DTA remedy prior to October 2006 because, as the Supreme Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

The claims raised by the petitioners are substantial and meritorious and involves both factual and legal claims that at least encompass an assertion that the prolonged indefinite detention is unlawful because the petitioner is not an enemy combatant. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, the courts should be in position to proceed immediately on the habeas petitions.

### C.   Under *UMW*, the Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that

---

[2] The construction of the § 2241 statute in *Rasul* stated what the statute had always meant. *Bousley v. United States*, 523 U.S. 614, 625-26 (1998) (judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision giving rise to that construction) (Stevens, J., concurring); *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311 n.12 (1994) ("[W]hen this court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.").

the office and purposes of the writ of habeas corpus are not compromised.'" 2007 WL 957363
(Justices Stevens and Kennedy, statement respecting the denial of certiorari).[3]  The Justices'
language echoes the long-established principle that, even if there is no jurisdiction, that ultimate
question is for the Supreme Court, and that while the matter is under consideration, the courts have
"authority from the necessity of the case to make orders to preserve the existing conditions and
subject of the petition." *UMW*, 330 U.S. at 291 (quoting *United States v. Spp*, 203 U.S. 563, 573
(1906) (Holmes, J.)).  This Court has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the
> question of jurisdiction is determined, there was "authority from the necessity of the
> case to make orders to preserve the existing conditions and the subject of the petition
> . . . ."  . . . Clearly there was "power to preserve existing conditions while . . .
> determining [the] authority to grant injunctive relief.'

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964)
(quoting *UMW*).  This Court should carefully protect the status quo by maintaining the orders entered
to date to assure the petitioners are not prejudiced in their ability to litigate the DTA action; to
preserve potential remedies before this Court; and to preserve the petitioners' safety and lives.

The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to
deciding issues in each petitioners' case including: Does the DTA provide a forum for resolving
issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ
been unconstitutionally suspended or eliminated? Are the MCA and the DTA inapplicable given
petitioners' jurisdictional arguments regarding the absence of initial military jurisdiction, which
would foreclose the CSRT from constituting a competent tribunal to render any decision regarding

---

[3] Quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of
certiorari).

him? Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised"?

The motion to dismiss should be denied because the Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if the District Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the petitioner, there must be an adequate record for this Court's appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petitions in the District Court remain in place until after the petitioners have exhausted the DTA procedures. During that process, the Respondents should be foreclosed from prejudicing the petitioner's ability to litigate these questions – at both the District Court and Circuit Court level.

**D.      The Orders On Appeal, Which Are Procedural And Preliminary To Ultimate Disposition On The Merits, Are Necessary To Protect Petitioners From Torture And Death And To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

The orders involved in this case involve questions of life and death: whether the petitioners have sufficient notice to raise questions regarding rendition to a country where they face torture or death in violation of the Convention Against Torture. In this case the Petitioner is at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture. The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioners' rights under the Third and Fourth Geneva Conventions, the Covenant Against Torture, and the 1954 Convention Relating to the Status of

7

Refugees, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954). Further, the foreseeable and direct risk that Petitioner will be subjected to torture constitutes a violation of his rights under customary international law.

By maintaining the status quo, the Court provides a minimal mechanism for preventing torture and death in violation of the Convention Against Torture: the petitioners face rendition to countries with some of the worst human rights records in the world; and, in addition, the Respondents have taken affirmative steps that have jeopardized detainees and their families in their home countries.

The petitioner is a citizen of Libya, whose designation as an enemy combatant may well mean torture or execution if he is repatriated. *See United States Department of State*, Country Reports on Human Rights Practices – 2006: Libya (available at http://www.state.gov/g/drl/rls/hrrpt/2006/78858.htm).. Even forced repatriation or rendition to other countries, such as Saudi Arabia, is extremely problematic: "Despite close cooperation on security issues, the United States remains concerned about human rights conditions in Saudi Arabia. Principal human rights problems include abuse of prisoners and incommunicado detention." United States Department of State, Background Note: Saudi Arabia (available at http://www.state.gov.r/pa/bgn/3584.htm). Conditions change, so the level of danger cannot be reasonably assessed until a transfer is imminent, hence the status quo must be maintained to allow the petitioner to seek further relief if appropriate. The Respondents, however, seek to unnecessarily place the petitioners at risk of potentially lethal consequences of a treaty violation.

The petitioners also face danger from another source: the Respondents' intentional exposure of information they knew to be dangerous without taking reasonable security precautions. In the

litigation with the Associated Press that resulted in the publication of CSRT transcripts, the Respondents recognized that information contained in those documents could endanger detainees and their families from terrorist organizations and, by inference, governments unable to protect against or sympathetic to such organizations:

> If the detainee's identity is connected to his testimony, and terrorist groups or other individuals abroad are displeased by something the detainee said to the Tribunal, DOD believes that this could put his family at serious risk of reprisals-including death or serious harm-at home. This risk also translates to the detainee himself when he is released from detention.

Declaration of Associate General Counsel Karen Hecker, Department of Defense at ¶ 9, filed in *Associated Press v. U.S. Department of Defense*, CV 05-3941 (S.D.N.Y. June 30, 2005). Despite this knowledge, the Respondents exposed CSRT information without taking reasonable steps, such as redaction or selective disclosure, to safeguard information that placed detainees and their families at risk.[4]

As such the status quo must be maintained to ensure that the anti-rendition and refoulment provisions of the Convention Against Torture are honored.[5] The protections provided by CAT

---

[4] The government's solicitation of consent to disclose from detainees, without obtaining such consent, also creates another issue not resolved in *Boumediene*: does the intentional action to expose life-endangering facts, in the context of New York civil litigation, create a sufficient nexus between detainees held for six years in territory exclusively controlled by the United States and this country that a higher level of constitutional protection applies?

[5] Art. III provides:

1.   No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2.   For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where

defend principles so deeply ingrained in our country's values that violations transgress a *jus cogens* norm. *Siderman de Blake v. Argentina*, 965 F.2d 699, 717 (9th Cir. 1992) (citing *Committee of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 941-42 (D.C. Cir. 1988), and *Filartinga v. Pena-Irala*, 630 F.2d 876, 884, 890 (2nd Cir. 1980)).   The dangers of rendition faced by the Petitioner implicates the same core values, warranting this Court's full and vigorous protection.

### E.     The Norm Is For Motions To Dismiss To Be Litigated From A Final Order Of The District Court.

The Respondents are asking this Court to enter orders without giving the District Courts the opportunity to rule in the first instance.   This Court's authority properly extends to final decisions of the District Courts.   28 U.S.C. s 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all  final decisions of the district courts of the United States . . . .").   The present cases are before the Court as interlocutory appeals addressing preliminary matters, pursuant to the limited jurisdiction provided by 28 U.S.C. § 1292.   There is no final order of the District Courts regarding jurisdiction or the merits of any of these habeas petitions.   The Court should not expand beyond its normal jurisdiction but should rather permit the District Courts to determine its own jurisdiction. *See Kircher et al v. Putnam Funds Trust et al.*, 126 S. Ct. 2145, 2155 (2006).   It would be premature for this Court to determine the dispositive questions without first giving the District Courts the opportunity to review, to consider a record,  and to decide on each individual case.

_____

applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

10

**F.**     ***Boumediene* Does Not Establish The Record To Which These Petitioners Should Be Bound Because They Are Exhausting Available Remedies And Other Legal Theories May Be Available On The Facts Of Their Cases.**

The Respondents' request for dismissal fails to recognize the protean detainee factual settings and resulting legal issues. The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues to be raised by the petitioners. *Texas v. Cobb*, 532 U.S. 162, __ (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also Booker v. United States*, [cite](limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most profound difference for all petitioners will be the resolution of the now-open question of the scope and efficacy of the DTA remedy, which will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluation of the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens in the *Boumediene* statement accompanying the denial of certiorari.

The DTA litigation, in addition to providing insight regarding the DTA as an alternative to habeas corpus, also will provide the opportunity for determining the District Court's role in the DTA exhaustion process. Besides providing the procedural context for the litigation, DTA petitions have included alternative requests for remand to the District Court or the Supreme Court to resolve controverted facts, remand to the District Court to address initial jurisdiction questions in the first instance, and remand to the District Court based on the inadequacy of the DTA procedure for factual development and equitable relief commensurate with habeas corpus. For the Circuit Court to exercise these options, the present habeas cases must be stayed and held in abeyance.

11

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of the habeas petitions under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, should involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation and address these petitioners' unique claims, including challenges under the bill of attainder, equal protection, due process, habeas corpus, and *ex post facto* clauses.

12

## Conclusion

The petitioners' habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits, and the petitioners have not had their individual facts and legal arguments heard. The Respondents' motion to undo the carefully crafted measures by the District Courts to balance competing interests is not only premature but unnecessarily places detainees in danger of torture and death. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *UMW*, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition;" under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time for the DTA direct actions to be litigated.

Dated this 25th day of April, 2007.

Respectfully submitted
Counsel for Petitioners:

Kevin G. Boris
RUPRECHT, HART & WEEKS, LLP
306 Main Street
Millburn, NJ 07041

By:    /s/ Kevin G. Boris

Louis A. Ruprecht
RUPRECHT, HART & WEEKS, LLP
306 Main Street
Millburn, NJ 07041

By:    /s/ Louis A. Ruprecht

13

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ———————————————— ) | | |
| Ahmed "Doe", *et al.*, ) | | Civil Action No. |
| ) | | **05-CV-1458 (ESH)** |
| v. ) | | |
| ) | | |
| **GEORGE W. BUSH,** ) | | |
| **President of the United States,** ) | | |
| *et al.,* ) | | |
| ) | | |
| *Respondents/Defendants.* ) | | |
| ———————————————— ) | | |

### CERTIFICATE OF SERVICE

I, Kevin G. Boris hereby certify that on this 25th day of April, 2007, I caused to be served via electronic filing a copy of the foregoing Opposition to Motion to Vacate the District Court Orders and Dismiss the Habeas Petititions for Lack of Jurisdiction on the following counsel:

Terry Marcus Henry
U.S. DEPARTMENT OF JUSTICE
P.O. Box 883
20 Massachusetts Avenue, NW
Suite 7144
Washington, DC 20044


Judry Laeb Subar
U.S. DEPARTMENT OF JUSTICE
Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7342
Washington, DC 20530

Preeya M. Noronha
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7226
Washington, DC 20530


Barbara J. Olshansky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, NY 10012